**Lisa R. BIGLEY, as a Taxpayer within the MSD of Wayne Township, and for all other similarly–situated citizens and taxpayers, Appellants/Cross–Appellees,**

v.

**MSD OF WAYNE TOWNSHIP SCHOOLS, acting by and through its School Board, Appellee/Cross–Appellant.**

No. 49A02–0706–CV–528.

Court of Appeals of Indiana.

Feb. 20, 2008.

---

Thomas A. Pastore, Pastore & Gooden, P.A., Indianapolis, IN, Attorney for Appellants.

Bryan H. Babb, V. Samuel Laurin III, Stephen A. Starks, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Lisa R. Bigley, as a taxpayer within the Metropolitan School District ("MSD") of Wayne Township, and for all other similarly-situated citizens and taxpayers ("the Taxpayers"), appeals the order granting attorney's fees pursuant to Indiana Trial Rule 65(C) to MSD of Wayne Township Schools, acting by and through its School Board ("the Board"). On cross-appeal, the Board challenges the denial of a portion of its claim for attorney's fees and requests appellate attorney's fees. We affirm and remand with instructions.

### Issues

The Taxpayers raise one issue, which we restate as follows:

I. Whether the trial court abused its discretion in granting part of the Board's claim for attorney's fees.

The Board cross-appeals raising two issues, restated as follows:

II. Whether the trial court abused its discretion in denying a portion of its claim for attorney's fees; and

III. Whether it is entitled to appellate attorney's fees.

### Facts and Procedural History

On September 23, 2003, the Taxpayers filed a complaint against the Board for a temporary restraining order ("TRO"), preliminary injunction, and final injunction. Specifically, the Taxpayers argued that the competitive bidding process used by the Board to build a swimming pool for the seventh- and eighth-grade Center at Lynhurst ("the Project") was not being conducted in compliance with Title 36 of the Indiana Code. The Taxpayers sought the following relief:

A. A temporary restraining order enjoining [the Board] from accepting bids, opening bids, awarding the Project and/or executing the Contract with any bidder and/or commencing and/or continuing the Swimming Pool Work at the Project;

B. An expedited hearing on [the Taxpayers'] request for preliminary injunctive relief;

C. A preliminary and permanent injunction perpetually enjoining [the Board] from the conduct complained of herein;

D. Judgment in [the Taxpayers'] favor, to include an Order to [the Board] to discontinue the bidding process for the Project, including the award and/or execution of the Contract and rebid the Project in compliance with Title 36 of the Indiana Code[.]

Appellee's App. at 10.

Also that day, and after having notified the Board of their intent to do so, the Taxpayers filed a motion for TRO and preliminary injunction. The trial court granted the TRO, issued special findings to support the TRO, ordered the Taxpayers to post security in the amount of $10,000, and set a hearing for October 3, 2003, on their motion for preliminary injunction.

On September 26, 2003, the trial court *sua sponte* issued an order vacating the special findings and TRO issued September 23, 2003, because the Taxpayers' motion for TRO failed to comply with Indiana Trial Rule 65(B)(2).[1]

On October 3, 2003, a hearing was held on the Taxpayers' motion for preliminary injunction. There was insufficient time for each party to conclude its evidence, and the hearing was continued to October 8, 2003. However, before the October 3 hearing was adjourned, counsel for the Board informed the trial court that the Board was scheduled to review bids in the interim and explained,

> Now, the T.R.O. has currently been lifted and I think we're sort of in the gray area, obviously here, in that we know this lawsuit is pending but I think in some ways it's somewhat unfair ... it's more than a little unfair if we were to go and award these bids pending this. The Court can certainly take a stand on this but at this point we're not enjoined but yet we're essentially enjoined. But without imposing additional security there's a lot of damages that could accrue here regardless of whether this public lawsuit goes ahead. I think that, at a minimum, [the Taxpayers] should be required to up their bond if we're going to be essentially enjoined until this case is resolved.

Appellants' App. at 57–58. The trial court responded,

> The record should reflect and I did mention that at the start of the hearing today that the Court did issue an Order vacating the special findings and restraining order that was issued by the Court on September 23rd. And that

that Order was entered on September the 26th, 2003. So, you are correct that from that date through today we've been operating without a temporary restraining order but the Court however will now, *based upon the pleadings of the parties* and the fact that everybody had notice and we've had this hearing today, *re-enter the temporary restraining order* until next Wednesday. Now, I don't know what the process is with respect to what you have indicated as reviewing the bids. You can review all you like as long as you don't award any contracts.

*Id.* at 58 (emphases added). The parties then discussed the appropriate amount at which to set bond. The trial court set bond at $30,000 and concluded the hearing.

On October 6, 2003, the Taxpayers filed a revised TRO. The same day, the Board filed an objection to the Taxpayers' revised TRO.

On October 8, 2003, the hearing was reconvened, and the parties submitted proposed findings of fact and conclusions thereon. That day, the trial court adopted the Board's findings of fact and conclusions thereon, and issued an order denying the Taxpayers' motion for preliminary injunction and dissolving the TRO.

The Taxpayers appealed, and this Court affirmed the trial court. *Bigley v. MSD of Wayne Twp. Sch.*, 823 N.E.2d 278 (Ind.Ct. App.2004), *trans. denied* (2005).

On November 29, 2006, the Board filed a motion for award of attorney's fees and brief in support thereof, claiming a total of $37,187.15 in attorney's fees and costs broken down as follows:

> From September 22 until September 26[, 2003] attorneys' fees incurred were

---

1. Indiana Trial Rule 65(B)(2) provides, "A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if [ ] the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required."

$9,355 and the costs were $28.80. From September 27 through October 3, 2003 attorneys' fees incurred were $17,269.50 and costs were $160.20. From October 4 through October 8, 2003 the attorneys' fees incurred were $10,335.50 and the costs were $38.15.

Appellants' App. at 34. On February 16, 2007, the trial court issued an order on attorney's fees, finding that "[the Board] is entitled to attorneys' fees and costs for work done between September 22, 2003 through end of day on September 26, 2003, and October 4, 2003 from the recess of proceedings on that date to end of day on October 8, 2003." *Id.* at 14. On March 29, 2007, the trial court issued an order awarding the Board attorney's fees of $19,415.95. On April 25, 2007, the Taxpayers filed a motion to correct error, which the trial court denied on May 1, 2007. The Taxpayers now appeal.

### Discussion and Decision

*I. Award of Attorney's Fees incurred October 4 through October 8, 2003*

The Taxpayers assert that the trial court erred in awarding the Board attorney's fees for the period October 4 through October 8, 2003.[2] The Board sought attorney's fees pursuant to Indiana Trial Rule 65(C), which provides:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Where a temporary injunction is dissolved and not replaced by a permanent injunction, the enjoined party is generally entitled to compensation for the damages it incurred. *H & G Ortho, Inc. v. Neodontics Int'l, Inc.,* 823 N.E.2d 718, 733 (Ind.Ct. App.2005). We have described the damages that are recoverable pursuant to Trial Rule 65(C):

"In order to recover damages because of an injunction it must be shown that any damage sustained is the natural, actual, and proximate result of such injunction. The rule is stated in High on Injunctions (4th Ed.) § 1663, as follows: 'The liability on an injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence.'"

*Hampton v. Morgan,* 654 N.E.2d 8, 9 (Ind. Ct.App.1995) (quoting *U.S. Fid. & Guar. Co. v. State ex rel. Ogden,* 104 Ind.App. 21, 26, 5 N.E.2d 115, 117 (1936)). Costs and damages under Indiana Trial Rule 65(C) may include attorney's fees.[3] *Id.* at 10. We review the decision of the trial court to award or deny attorney's fees for an abuse of discretion. *Nelson v. Marchand,* 691 N.E.2d 1264, 1269 (Ind.Ct.App.1998). In the absence of an affirmative showing of error or abuse of discretion, we must affirm the trial court. *Campbell v. El Dee Apts.,* 701 N.E.2d 616, 621 (Ind.Ct.App. 1998).

Specifically, the Taxpayers claim that the trial court wrongfully entered the

---

2. The Taxpayers are not challenging the award of attorney's fees for the period September 22 through September 26, 2003.

3. Indiana Trial Rule 65(C) is an exception to the American Rule, which makes parties responsible for their own attorney's fees. *National Sanitary Supply Co. v. Wright,* 644 N.E.2d 903, 905 (Ind.Ct.App.1994).

re-issued or second TRO, and therefore it was an abuse of discretion to award the Board attorney's fees incurred as a result that TRO. The Taxpayers argue, "As of October 3, 2003, there was no motion for a temporary restraining order pending before the [trial court] and the Taxpayers never requested that the [trial court] reconsider its prior ruling vacating the First TRO." Appellants' Br. at 8. The Taxpayers contend that "it was improper for the [trial court] to issue, sua sponte, a restraining order without the pending, affirmative and specific request of the Taxpayers." *Id.* In support of their argument, the Taxpayers cite *Squibb v. State,* 860 N.E.2d 904 (Ind. Ct.App.2007), in which another panel of this Court stated that "the law seems to be well established that a trial court may not issue a preliminary injunction absent the request of a party." *Id.* at 908. However, *Squibb* is inapplicable to the case at bar.

In *Squibb,* the State filed an administrative complaint against the Squibbs alleging that they had issued unregistered securities in violation of the Indiana Securities Act. On the same day, the State filed a motion for prejudgment attachment and garnishment.

> On April 13, 2006, the trial court issued its Findings of Fact, Conclusions of Law, and Order. The trial court found that sufficient evidence was introduced to give it reason to believe that Mrs. Squibb had knowingly sold unregistered securities in a fraudulent and deceitful manner. The trial court further found that evidence indicated that the Squibbs were either removing or were about to remove their property subject to execution, and that they had either disposed or were about to dispose of property with the intent to cheat, hinder, or delay investors. Pursuant to these findings, the trial court granted the State's motion for prejudgment attachment and garnishment, thereby freezing the [Squibbs'] accounts, *and issued a preliminary injunction requiring the Squibbs not to diminish, transfer, alienate or dispose of any substantial asset* without prior written authorization of this Court.

*Id.* (citation and quotation marks omitted) (emphasis added). Following a thorough discussion of the relevant cases, trial rule, and statutes, the *Squibb* court concluded that the trial court had abused its discretion in issuing the preliminary injunction because the State had not requested that Mrs. Squibb be enjoined from disposing of any substantial asset. *Id.* at 910.

In contrast to the State in *Squibb,* the Taxpayers specifically requested a TRO, preliminary injunction, and a permanent injunction against the Board. As such, we find that the trial court was within its authority to re-issue the TRO based on Indiana Trial Rule 65(A)(4), which provides, "*Upon the court's own motion* or the motion of any party, orders granting or denying temporary restraining orders or preliminary injunctions may be dissolved, modified, granted or *reinstated.*" (Emphases added.) Further, the Taxpayers did not object to the trial court's stated intent to reissue the TRO and agreed with increasing bond. Thus, the Taxpayers' assertion that the award of attorney's fees was an abuse of discretion is therefore not supported by their claim that the TRO was wrongfully re-issued.[4] We therefore af-

---

4. The Taxpayers also argue that they did not need the re-issued TRO to protect their rights. While not entirely clear, it appears that the Taxpayers present this argument to support their contention that "equity dictates that the assessment of attorneys' fees against the Taxpayers should have been limited to the time period when the Taxpayers' actions actually restrained [the Board] not by the sua sponte order entered by the [trial court]." Appel-

firm the trial court's order awarding the Board attorney's fees and costs incurred October 4 through October 8, 2003.

## II. Denial of Attorney's Fees Incurred September 27 through October 3, 2003

■ On cross-appeal, the Board claims that the trial court abused its discretion in declining to award the Board attorney's fees and costs incurred September 27 through October 3, 2003. The Board argues that even though the TRO was vacated on September 26, it was vacated for noncompliance with Trial Rule 65(B)(2) and not because it was without merit, and the Board was effectively restrained from awarding the contract for the Project during that time. Further, the Board notes that the trial court was aware of the Board's difficult position, as shown by the trial court's statement in its order on attorney's fees:

> This Court is cognizant of [the Board's] dilemma between September 27, 2003 and October 3, 2003, the period of time when no TRO was in effect, but during which no reasonable attorney would act in opposition to the clear discretion of the Court.

> Although the concept of a constructive TRO is inviting, this Court cannot find any basis for constructive restraint under current case law.

Appellee's App. at 14.

While the Board concedes that there is not any recent Indiana case law addressing the concept of a constructive restraint, the Board cites *Rhodes–Burford Furniture Co. v. Mattox*, 13 Ind.App. 221, 40 N.E. 545 (1895) to support its position. In *Rhodes–Burford*, the plaintiff requested and obtained a restraining order, which was later dissolved. The defendant sought attorney's fees for defending against the TRO. The plaintiff argued that the defendant was not entitled to attorney's fees for defending against the TRO because it had been invalidly issued. We declined to decide whether the TRO was actually invalid because the order was "fair upon its face [and t]here was nothing in the order itself to apprise those restrained of any illegality in its origin." *Id.* at 223, 40 N.E. at 546. We noted that it would be "manifestly unjust and inequitable to require a defendant served with an injunction regular upon its face to determine at his own hazards its validity, and assume the risk of defending also a proceeding for contempt of court." *Id.* at 224, 40 N.E. at 546. We further observed that it was inappropriate for the plaintiff to benefit from the TRO and then later claim that the defendant should not have paid attention to the order because it was invalid. *Id.*, 40 N.E. at 546.

We are unpersuaded by the Board's reliance on *Rhodes–Burford* because a facially valid restraining order was in effect in that case. The risk of being held in contempt for defying such an order is significantly greater than any risk that existed in this case because of the simple fact that there was no actual restraining order to defy.

The Board also cites *Palace Pharmacy, Inc. v. Gardner & Guidone, Inc.*, 164 Ind. App. 513, 515, 329 N.E.2d 642, 644 (1975), for the principle that a defendant who ultimately prevails in a case should not suffer any damages caused by a preliminary injunction, which is granted upon a mere prima facie showing that the plaintiff

lants' Br. at 7–8. Although our review of the October 3, 2003, transcript shows that the Taxpayers did not orally request that the TRO be reissued, the Taxpayers filed a revised TRO on October 6, 2003. This TRO was not entered by the trial court, but it is contrary to the Taxpayers' current position that they did not want or need the TRO. Simply put, the Taxpayers' argument that they did not want or need the TRO does not persuade us that the trial court abused its discretion in awarding attorney's fees to the Board.

is entitled to a permanent injunction. Likewise, according to the Board, it is entitled to damages, which includes attorney's fees, because it was damaged by the TRO and was enjoined by even less than a mere prima facie showing.

In *Palace,* a preliminary injunction was granted and upheld on appeal. The trial court then made the injunction permanent, and the defendant appealed. We reversed and the injunction was ordered dissolved. The defendant sought and was granted attorney's fees incurred in defending the preliminary injunction. The plaintiff appealed, arguing that the defendant was not entitled to attorney's fees because the preliminary injunction was properly granted. In upholding the trial court's judgment, we noted,

> Since a preliminary injunction may result in injury to a defendant prior to a final determination of the merits of the case, no preliminary injunction may be granted "except upon the giving of security by the applicant." Ind. Rules of Procedure, Trial Rule 65(C). The security is intended to compensate the defendant for any damages incurred as a result of the preliminary injunction if he prevails at a later hearing.

*Id.* at 515, 329 N.E.2d at 644.

*Palace* is inapposite. We are unpersuaded that a vacated TRO is equivalent to a properly granted preliminary injunction. We conclude that the trial court did not abuse its discretion in denying attorney's fees incurred by the Board from September 27 through October 3, 2003.[5]

### III. Appellate Attorney's Fees

The Board also requests that we permit it to recover appellate attorney fees from the Taxpayers it has incurred in defending the fee award.[6] Neither party cites, nor does our own research reveal, any Indiana cases in which the recovery of attorney's fees incurred in defending an appeal of a Trial Rule 65(C) award of attorney's fees was examined.[7] However, the parties discuss *Walton v. Claybridge Homeowners Ass'n,* 825 N.E.2d 818 (Ind.Ct.App.2005), cited by the Board in support of its position, at length. While the *Walton* court analyzed whether attorney's fees incurred in preparing and defending a petition for attorney's fees were recoverable under a declaration of covenants and restrictions ("the DCR"), we agree with the Board that *Walton* is helpful to the resolution of the issue here.

In *Walton,* the Claybridge Homeowners Association ("HOA") sought and was granted an injunction against Walton. The DCR provided that the party who substantially prevailed in an action to en-

5. Citing *Hampton,* 654 N.E.2d 8, the Board also asserts that the attorney's fees incurred between September 27 and October 3, 2003, are recoverable because they flow directly from the initial TRO, complaint, and motion. This assertion fails to account for the order vacating the initial TRO. Further, *Hampton* is inapplicable to the case at bar. There, another panel of this Court held, inter alia, (1) that damages for lost sales may be recoverable where it is established that the lost sales were a direct result of the injunction and not just the lawsuit, and (2) in an action involving more than an injunction, a damage award based upon attorney's fees should be restrict-

ed to the fees incurred in defending against the injunction. *Id.* at 9–10.

6. At one point the Board asserts that "it is entitled to attorney fees and costs incurred in filing and defending its fee petition." Appellee's Br. at 20. However, it appears that the Board is requesting only that it be awarded attorney fees incurred in this appeal.

7. Likewise, there does not appear to be any Indiana case law dealing with the recoverability of attorney's fees incurred in preparing and filing a request for attorney's fees pursuant to Trial Rule 65(C).

force the DCR was entitled to recover all costs of enforcement, including attorney's fees. Walton appealed, but we determined that the injunction was properly granted and that the trial court properly ordered Walton to pay the HOA's attorney's fees. The HOA requested and was granted attorney's fees and costs incurred by it in (1) obtaining the injunction, (2) defending Walton's appeal, and (3) filing its fee petition. Walton appealed the trial court's decision to grant the HOA attorney's fees for the two latter endeavors.

With regard to the attorney's fees incurred in filing the HOA's fee petition, we observed that allowing an award of attorney fees serves to make the prevailing party to a contract whole; that is, to fully compensate the party who has successfully enforced his or her legal rights in court. *Id.* at 825. We further noted that

> when the attorneys for the HOA prepared and defended the fee petition, they were acting on behalf of the prevailing party, just as they had done in obtaining the injunction and defending the trial court's judgment on appeal.

Specifically, the attorneys were taking steps necessary to establish the attorney fees to which the HOA was entitled under the DCR. Requiring the HOA to absorb any fees or costs its attorneys incurred in establishing the fees would not fully compensate it for enforcing its rights.

*Id.*[8] We therefore affirmed the trial court's award to HOA of attorney's fees and costs associated with preparing and defending the fee petition.[9] *Id.* at 825–26.

As previously noted, Indiana Trial Rule 65(C) prohibits the trial court from issuing a restraining order or preliminary injunction "except upon the giving of security by the applicant." We have observed that the purpose of the security is to make the defendant whole. *See Howard D. Johnson Co. v. Parkside Dev. Corp.*, 169 Ind.App. 379, 389, 348 N.E.2d 656, 663 (Ind.Ct.App. 1976) ("[I]f the damages incurred by the defendant exceed the amount of the security, it is only logical that the defendant should be made whole again by recovery of the excess from the plaintiff."). In addition, Trial Rule 65(C) permits recovery for

---

8. We also noted that

> awards for fees of this nature have been permitted by federal statute. *See, e.g., Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir.1999) (upholding district court's award of fees for preparation of fee request under Fair Labor Standards Act); *Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir.1988) (affirming award for "time spent pursuing requests for fees" in claim for attorney fees under 42 U.S.C. § 1988)[.]

*Walton*, 825 N.E.2d at 825 n. 2.

9. In *In re Estate of Inlow*, 735 N.E.2d 240 (Ind.Ct.App.2000), we held that the law firm representing the personal representative of an estate was not entitled to fees incurred in preparing and defending the fee petition. *Id.* at 250. We reasoned,

> To be paid, an attorney must first tell a client what he owes. Requiring a client to pay an additional amount for being told what he owes in the first instance is neither

good business nor good law. The preparation of a fee petition, as of any billing statement, is clearly a service performed for the attorney seeking to be paid, rather than a service performed for the estate. Thus, time spent preparing the fee petition is a routine cost of doing business that must be factored into an attorney's hourly rate, as is universally done with non-probate clients, and cannot be considered a separate expense to be subsidized by the estate as part of the compensation awarded pursuant to section 29–1–10–13.

*Id.* at 253. In *Walton*, we observed, "While the *Inlow* court recognized that time spent preparing a billing statement generally is not charged to non-probate clients, we believe the court was referring to clients paying for an attorney's services and not parties seeking attorney fees under a contract." 825 N.E.2d at 824.

"such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

■ Here, the Board was awarded attorney's fees incurred during the time that the reissued TRO was in effect, October 4 through October 8, 2003. In defending the award of these attorney's fees on appeal, the Board's attorneys are acting on behalf of the Board. *See Walton*, 825 N.E.2d at 825.[10] The Board's attorneys have taken the steps necessary to insure that the Board receives the attorney's fees to which it is entitled pursuant to Trial Rule 65(C). *See id.* Requiring the Board to absorb any fees or costs incurred in protecting the awarded fees would not fully compensate the Board for defending against the TRO. *See id.* Accordingly, we conclude that the Board is entitled to appellate attorney's fees incurred in defending its fee award. We therefore remand for a hearing on the attorney's fees sustained by the Board in defending the Taxpayers' appeal of the order granting the Board attorney's fees incurred October 4 through October 8, 2003.

Affirmed and remanded with instructions.

BAILEY, J., and NAJAM, J., concur.

---

10. The Taxpayers attempt to distinguish *Walton* by arguing that Trial Rule 65(C) is not the same as a freely negotiated agreement. While we acknowledge that the trial rule and a contract are different in many significant ways, we think the rationale articulated by the *Walton* court is applicable to the award of appellate attorney's fees here. Further, we disagree with the Taxpayers that the language of the trial rule precludes the type of damages that the Board is seeking.